Jefferson R. Hayden #026264
**GAMMAGE & BURNHAM, P.L.C.**
ATTORNEYS AT LAW
TWO NORTH CENTRAL AVENUE
15TH FLOOR
PHOENIX, AZ 85004
TELEPHONE (602) 256-0566
FAX (602) 256-4475
EMAIL: JHAYDEN@GBLAW.COM

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Henry & Carla, LLC, | No. 2:19-cv-05702-NVM |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT** |
| Blake's Lotaburger, LLC; SimonCRE Broadway II, LLC; Joshua Simon and Jane Doe Simon, husband and wife; and Scott A. Esplin and Jane Doe Esplin, husband and wife, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Henry & Carla, LLC, by and through its attorneys, Gammage & Burnham, P.L.C., for its Complaint, alleges as follows:

**JURISDICTION**

1. This court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs. This Court has jurisdiction to hear the claims alleged in this Complaint and is a court of competent jurisdiction to grant the relief requested.

11161.1.1665774.1

## VENUE

2. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of the property that is the subject of the action is situated in this district.

## PARTIES

3. Henry & Carla, LLC ("HC") is a limited liability company formed under the laws of California which conducts business in California and Arizona. HC has five individual members and four trust members. All individual members are residents and citizens of California. All trustees of the member trusts are also residents and citizens of California. The individual members are Bart Ladd, Lisa Ladd, Michael Mantelli, David Mantelli, and Marc Mantelli. HC's four trust members are the Ladd Family Grandchildren's Trust, the Michael P. Mantelli & Phyllis A. Mantelli Irrevocable Trust (the "Mantelli Daughters Trust"), the Mantelli Educational Trust for Great Grandchildren (the "Educational Trust"), and the Barrett Family Grandchildren's Trust. The trustees for the Ladd Family Grandchildren's Trust are Bart Ladd and Michele Ladd, both of whom are California residents. The trustee for the Mantelli Daughters Trust is Marc Mantelli, who is a California resident. The trustees for the Educational Trust are Bart Ladd and Marc Mantelli, both of whom are California residents. The trustee for the Barrett Family Grandchildren's Trust are Bart Ladd and Lisa Ladd, both of whom are California residents. Accordingly, for jurisdictional analysis, HC is a citizen of California.

4. Defendant SimonCRE Broadway II, LLC ("SimonCRE") is a limited liability company formed and existing under the laws of Arizona.

5. According to filings with the Arizona Corporation Commission, SimonCRE's only member is the Simon Revocable Trust, which was formed and exists under the laws of Arizona. The trustee for the Simon Revocable Trust is Joshua Simon.

2

6. Joshua Simon and Jane Doe Simon are Arizona residents.

7. At all times relevant to this Complaint, Joshua Simon and Jane Doe Simon were husband and wife. All actions of Joshua Simon in relation to this matter were performed for the benefit of his own individual interests as well as for the benefit of the marital community.

8. At all times relevant to this Complaint, Joshua Simon acted as the CEO and agent of SimonCRE Broadway II, LLC.

9. Defendant Blake's Lotaburger, LLC ("Lotaburger") is a limited liability company formed and existing under the laws of Delaware.

10. According to filings with the Arizona Corporation Commission, Lotaburger's only member is Teewinot Investment Properties LLC, which was formed and exists under the laws of Wyoming. Based on information from the Wyoming Secretary of State filings, the New Mexico Secretary of State: Corporations and Business Services filings, and New Mexico publications, the members of Teewinot Investment Properties LLC are Ronald C. Rule and Brian Rule. According to the same sources, Ronald C. Rule is a Montana resident and Brian Rule is a New Mexico resident.

11. At all times relevant to this Complaint, Scott A. Esplin acted as the Vice President of Finance for Lotaburger.

12. Scott Esplin and Jane Doe Esplin are New Mexico residents.

13. At all times relevant to this Complaint, Scott Esplin and Jane Doe Esplin were husband and wife. All actions of Scott Esplin in relation to this matter were performed for the benefit of his own individual interests as well as for the benefit of the marital community.

11161.1.1665774.1

**FACTUAL ALLEGATIONS**

**The Subject Property**

14. The real property at the center of this litigation is located in Gilbert, Arizona with a legal description of Lot 2-1 of the Final Plat of "Simon CRE Retail Development" recorded in the Official Records of Maricopa County Recorder on April 19, 2017 at Recorder No. 20170280270 Book 1321 Page 35 (hereafter, the "Property").

**The Sale and Assignment**

15. Defendants SimonCRE and Lotaburger induced HC to purchase the Property under false pretenses to HC's detriment.

16. In May 2017, SimonCRE owned the Property.

17. At that time, the Property was subject to a September 1, 2016 Ground Lease between SimonCRE as lessor and Lotaburger as lessee ("Ground Lease"). A true and accurate copy of the Ground Lease and all amendments are attached hereto as **Exhibit A.**

18. Under the Ground Lease, Lotaburger is required to make monthly rent payments to the lessor.

19. Sections 12.01, 12.02, and 26.03 of the Ground Lease require Lotaburger construct a building on the Property and use the Property for the operation of a restaurant.

20. In or about June 2017, HC managers were interested in owning property with an operating restaurant and inquired about purchasing the Property.

21. HC communicated to SimonCRE that it would only purchase the Property if there was a contracted tenant who would build and operate a restaurant on the Property.

22. At this time, the Property was undeveloped and no restaurant construction had begun.

23. While contemplating purchase of the Property, HC managers communicated with SimonCRE broker, Chad Tiedman of Phoenix Commercial Advisors.

11161.1.1665774.1

24. In June and July of 2017, HC repeatedly asked Chad Tiedman when Lotaburger was expected to begin construction of the restaurant.

25. Chad Tiedman repeatedly assured that Lotaburger would begin construction in late 2017.

26. Based on the representations that SimonCRE would provide a ground tenant who would build a restaurant in 2017, HC purchased the Property.

27. In July 2017, HC and SimonCRE engaged in negotiations for the sale of the Property to HC.

28. SimonCRE prevented HC from communicating directly with Lotaburger during these negotiations.

29. On or about August 21, 2017, HC and SimonCRE executed the Agreement of Purchase and Sale to transfer title of the Property from SimonCRE to HC. A true and accurate copy of the Agreement of Purchase and Sale without its exhibits is attached hereto as **Exhibit B.**

30. A material and inextricable element of the Property sale was the simultaneous assignment of the Ground Lease. SimonCRE assigned its interest in the Ground Lease with Lotaburger to HC. A true and accurate copy of the Assignment and Assumption of Leases without its exhibits is attached hereto as **Exhibit C**.

31. Escrow closed on or about September 29, 2017 (the "Closing") and HC paid SimonCRE $1,308,057.80 for the Property.

### **Lotaburger's and SimonCRE's Deception**

32. Unbeknownst to HC, SimonCRE completed the Closing with full knowledge that Lotaburger would never perform its obligations under the Ground Lease.

33. On August 29, 2017, Lotaburger executed an amendment to the Ground Lease which extended the deadline for Lotaburger to complete construction of a restaurant to July 31, 2018.

5

34. Defendants Joshua Simon and Scott Esplin signed the Ground Lease amendment.

35. Prior to execution of the Ground Lease amendment, prior to Closing, and prior to the assignment of the Ground Lease, Lotaburger's facilities representative, Paula Hayden and other Lotaburger decision makers decided they would never build a restaurant on the Property.

36. Scott Esplin was aware of Lotaburger's decision not to build at the time he signed the Ground Lease amendment.

37. In September 2017, Lotaburger knew SimonCRE was in escrow with HC for the sale of the Property and was going to assign the Ground Lease to HC.

38. On or about September 26, 2017, prior to Closing, Lotaburger's in-house counsel, Cristin Heyns called SimonCRE manager, Joshua Simon. During the phone call with Joshua Simon, Cristin Heyns said that Lotaburger planned to breach the Ground Lease and would never build a restaurant on the Property.

39. During that same phone call, Cristin Heyns told Joshua Simon that Lotaburger would not comply with its obligations under the Ground Lease.

40. SimonCRE knew that HC would not purchase the Property without Lotaburger's building construction and restaurant business, so SimonCRE instructed Lotaburger to not disclose the planned breach to HC.

41. Rather that disclose this material fact, SimonCRE instructed Lotaburger to invoke its sublease rights under the Ground Lease.

42. Before Closing, neither Lotaburger nor SimonCRE communicated Lotaburger's plans to breach the Ground Lease to HC.

43. SimonCRE executed the Closing with knowledge that its representations about Lotaburger's plans to build were false.

11161.1.1665774.1

44. SimonCRE and Lotaburger were consciously aware of their wrongful conduct, yet pursued it intending to cause injury to HC or knowing that it created a substantial risk of significant harm to HC.

45. At all times, HC acted in reliance on the numerous representations that Lotaburger would build a restaurant on the Property pursuant to its obligations in the Ground Lease.

**Lotaburger's Breach**

46. On or about October 3, 2017, four days *after* Closing, Lotaburger's in-house counsel, Cristin Heyns, called HC's agent Patrick Stafford. During that phone call, Cristin Heyns finally disclosed that Lotaburger would never construct a building on the Property.

47. As of August 2019, no construction had begun on the Property.

48. On August 21, 2019, counsel for HC sent Lotaburger a notice of default for failure to construct and operate a restaurant and demanded Lotaburger cure the default.

49. On November 8, 2019, counsel for Lotaburger responded with a letter to HC confirming that Lotaburger will never construct a building on the Property.

50. The same letter unequivocally declared that Lotaburger will cease making the required rent payments after April 2020, if not sooner.

51. The Property is less valuable without an operating restaurant on it.

52. The Property is more challenging to sell or lease without a building.

53. HC would not have purchased the Property without Lotaburger's commitment to open and operate a restaurant on the Property.

# COUNT I

## (Common Law Fraud: Intentional Misrepresentation, Concealment, and Non-Disclosure)

54. HC hereby incorporates all other allegations of this Complaint.

55. SimonCRE and Lotaburger made intentional misrepresentations to HC that Lotaburger intended to build a restaurant on the Property.

56. These representations were false at the time they were made because SimonCRE and Lotaburger knew Lotaburger did not intend to build a restaurant on the Property.

57. SimonCRE and Lotaburger also failed to correct HC's incorrect assumptions that Lotaburger intended to build a restaurant on the Property.

58. SimonCRE and Lotaburger agreed to actively conceal information about Lotaburger's intent to not build from HC.

59. SimonCRE and Lotaburger owed a duty to disclose to HC that Lotaburger would not build a restaurant on the Property. They failed to disclose this essential information.

60. SimonCRE and Lotaburger intended for HC to rely upon the representations and knew that HC was actually relying on these representations in agreeing to purchase the Property and the Ground Lease.

61. HC did not know that SimonCRE's and Lotaburger's representations were false.

62. HC had the right to rely, and actually relied, on SimonCRE's and Lotaburger's representations.

63. These representations were material and sufficiently important to influence HC's actions in investing in the Property and the Ground Lease.

64. As a result of this reliance, HC has suffered damages.

11161.1.1665774.1

65. SimonCRE and Lotaburger acted maliciously toward HC with a complete disregard for its rights.

66. Due to fraud committed by SimonCRE and Lotaburger, HC is entitled to judgment for its actual and consequential damages, for punitive damages, and for an award of attorneys' fees and costs.

67. HC's purchase of the Property and Ground Lease was based upon the fraudulent inducement and other breaches of duty by SimonCRE and Lotaburger. But for SimonCRE and Lotaburger's fraud, HC would not have purchased the Property or the Ground Lease.

68. In the interest of equity, the sales transaction should be rescinded in its entirety. HC's purchase monies in the amount of $1,308,057.80 should be returned to HC with applicable interest. The Property should be deeded back to SimonCRE and the Ground Lease should be assigned back to SimonCRE.

## COUNT II

### (Mistake)

69. HC hereby incorporates all other allegations of this Complaint.

70. SimonCRE and Lotaburger made the above-referenced misrepresentations that Lotaburger intended to build a restaurant on the Property.

71. SimonCRE's and Lotaburger's representations were false.

72. HC was ignorant of the representations' falsity.

73. HC was induced to agree to purchase the Property under this unilateral mistake of fact caused by misrepresentations, concealment, omissions, and other breaches of duty by SimonCRE and Lotaburger.

74. SimonCRE and Lotaburger knew, or should have known, that HC was mistaken prior to Closing.

75. Alternatively, the parties entered into the transactions for the purchase of the

9
11161.1.1665774.1

Property and the assignment of the Ground Lease under the mutual mistake of fact that Lotaburger would build and operate a restaurant on the Property.

76. But for the mistakes, HC would not have purchased the Property or the Ground Lease.

77. In the interest of equity, the sales transaction should be rescinded in its entirety. HC's purchase monies in the amount of $1,308,057.80 should be returned to HC with applicable interest. The Property should be deeded back to SimonCRE and the Ground Lease should be assigned back to SimonCRE.

## COUNT III

### (Breach of Duty of Good Faith and Fair Dealing)

78. HC hereby incorporates all other allegations of this Complaint.

79. By virtue of their contractual agreements in the Agreement for Purchase and Sale and the Ground Lease, SimonCRE and Lotaburger owed HC a covenant of good faith and fair dealing.

80. SimonCRE and Lotaburger breached their covenant of good faith and fair dealing by denying HC the benefit of its contractual agreements.

81. As a result of the breach of this duty, HC has suffered damages.

82. SimonCRE and Lotaburger acted maliciously toward HC with a complete disregard for its rights.

83. Due to the breach of covenant of good faith and fair dealing by SimonCRE and Lotaburger, HC is entitled to judgment for its actual and consequential damages, for punitive damages, and for an award of attorneys' fees and costs.

11161.1.1665774.1

## COUNT IV

### (Breach of Contract against Lotaburger only)

84. HC hereby incorporates all other allegations of this Complaint.

85. The Ground Lease constitutes an enforceable contract between HC and Lotaburger.

86. HC fully performed its obligations under the Ground Lease.

87. Lotaburger breached the Ground Lease by failing to construct a restaurant on the Property within the required time.

88. Lotaburger breached the Ground Lease by failing to operate a Lotaburger restaurant on the Property.

89. Lotaburger breached the Ground Lease by anticipatory repudiation when it unequivocally stated it would stop paying rent after April 2020.

90. The anticipatory breach of a material provision of a contract has the legal effect of a total breach of contract.

91. HC has suffered damages and continues to suffer damages as a result of Lotaburger's failure to build and operate a restaurant on the Property.

92. HC is entitled to a monetary judgment against Lotaburger for its actual and consequential damages to be determined by a jury.

93. HC is also entitled to an award of attorneys' fees and costs against Lotaburger under the terms of the Ground Lease and A.R.S. §§ 12-341 and 12-341.01.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Henry & Carla, LLC requests judgment against Defendants, as follows:

    A. Rescission of the Agreement for Purchase and Sale of the Property with purchase monies in the amount of $1,308,057.80 returned to HC with applicable interest and the Property deeded back to SimonCRE;

B. Compensatory and consequential damages, in amounts to be proven, with prejudgment and post-judgment interest thereon;

C. Punitive damages, in amounts to be proven, with post-judgment interest thereon;

D. An award of attorneys' fees and costs, with post-judgment interest thereon; and

E. Awarding such other and further relief as the Court deems just and proper.

DATED this 13th day of December, 2019.

                GAMMAGE & BURNHAM PLC

                By /s/ Jefferson Hayden
                    Jefferson R. Hayden
                    Two North Central Avenue, 15th Floor
                    Phoenix, Arizona 85004
                    Attorneys for Plaintiff

11161.1.1665774.1